THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID W. LEWIS, Defendant-Appellant.

Fourth District   No. 4—90—0672

Opinion filed March 29, 1991.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Amy K. Schmidt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LUND delivered the opinion of the court:

On July 20, 1990, defendant David Lewis was found guilty by a jury sitting in the McLean County circuit court of committing the offenses of unlawful possession of less than 15 grams of cocaine and un-

lawful possession of less than 15 grams of heroine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(a).) He was subsequently sentenced to concurrent extended-term six-year prison sentences and fined $1,380. Defendant now appeals, asserting the court erred (1) in denying his motion to suppress; and (2) in concluding defendant was eligible for an extended-term sentence. We disagree and affirm.

Prior to trial, defendant filed a motion seeking to suppress the evidence seized from a search of the trunk of his car, maintaining it was done without his consent and without a warrant. At the hearing, defendant testified that around 8 p.m. on February 8, 1990, he was driving on Interstate 55. At that time he was doing nothing wrong, and a State Police trooper pulled him over. The trooper had defendant walk back to the squad car, where the trooper told defendant he had stopped him for weaving, which defendant denied doing. The trooper then gave defendant a warning ticket. Defendant proceeded toward his car, but the trooper stopped him in between the cars and patted him down. The trooper then went to look in the car. When defendant objected, the trooper told him he could do anything he wanted to.

Defendant testified that another trooper arrived after a minute or two, and this trooper had his gun drawn. The trooper conducting the search exited the passenger's compartment and, accusing defendant of lying, asked where the marijuana was. This trooper told defendant he found some rolling papers and some marijuana seeds. Defendant denied any knowledge of these, maintaining they were not there. Defendant observed the trooper had been in his glove compartment. The trooper then proceeded to the trunk of the car. The next thing defendant knew, he was under arrest. Defendant never gave them permission to search, nor did they present a search warrant.

Trooper Jeff Gaither testified that he stopped defendant's vehicle because it was weaving. He called for another unit, because he believed he might have a driving-under-the-influence-of-alcohol arrest. He had defendant come back to the squad car. He noticed no alcohol on defendant's breath, so he prepared a warning ticket for defendant and had him sign it. Defendant appeared nervous, so Gaither explained the drug interdiction program. He then asked if he could take a look in defendant's car. Defendant was hesitant, but responded, "Yeah, go ahead."

At this time, Trooper William Colbrook arrived to assist. Colbrook talked to defendant while Gaither looked into the car. Gaither first smelled the strong odor of burnt marijuana. He observed some loose, green, leafy material, which he believed to be marijuana, on the front seat. He saw more of this lying in the backseat and on the rear floor-

board. He also observed rolling papers and a cigarette lighter on the backseat by the leafy material. Gaither did not gather this substance together, since it probably amounted to less than a gram and the laboratory will not test such a small amount. Gaither told defendant what he saw and proceeded to the trunk. Defendant did not want Gaither to search the trunk. However, Gaither explained that based on what he had already found, he was going to search. Found in the trunk were cocaine, heroine, some syringes, several pipes, and several hand-rolled cigarettes.

Trooper Colbrook testified that he responded to the scene. When he arrived, Gaither indicated defendant had given him consent to search his car. This conversation took place in defendant's presence. Defendant was calm during the search until Gaither proceeded to the trunk. Defendant wanted to know what was going on, and Gaither explained that, due to what he had found, he was going to search the trunk. Later, after defendant was arrested, Colbrook searched the car further. He also observed the green, leafy substance, which he identified as marijuana, on the driver seat and on the backseat. He could smell the odor of marijuana.

The court found that Gaither had probable cause to stop the vehicle for the weaving, and that defendant initially gave Gaither consent to search the car. The court concluded that once the marijuana was found, there was probable cause for a search of the entire vehicle. Accordingly, the court denied the motion.

Defendant was subsequently found guilty on substantially the same evidence. At the sentencing hearing, it was established that defendant had a 1981 conviction for unlawful distribution of a controlled substance in the Federal courts in Illinois. The court concluded this qualified defendant for an extended-term sentence. Accordingly, the court imposed the six-year sentence. This appeal followed.

■ Defendant initially contends the court's order denying his motion to suppress was erroneous. It is well settled that police troopers must obtain a search warrant prior to searching a motor vehicle unless the circumstances fall within an exception to the warrant requirement. (*People v. Binder* (1989), 180 Ill. App. 3d 624, 627, 536 N.E.2d 218, 220; *People v. Lawrence* (1988), 174 Ill. App. 3d 818, 821-22, 529 N.E.2d 63, 65.) One such exception is where the owner gives his consent to a search. (*People v. Woolery* (1990), 193 Ill. App. 3d 892, 895, 550 N.E.2d 616, 617.) Another is where the police have probable cause. (*Binder*, 180 Ill. App. 3d at 627, 536 N.E.2d at 220; *Lawrence*, 174 Ill. App. 3d at 822, 529 N.E.2d at 65.) Both exceptions are involved in this case.

■■■ The court found defendant was stopped for a valid traffic offense and that he initially gave Gaither a consent to search his vehicle. While defendant contested these assertions at trial, he does not do so now. It is just as well because the trial court's determination on the question of the voluntariness of a consent to search is to be accepted unless it is clearly unreasonable. (*Woolery*, 193 Ill. App. 3d at 895, 550 N.E.2d at 618.) Here, the court heard and observed the witnesses, and it would be impossible to conclude that its findings are against the manifest weight of the evidence.

■ This consent allows Gaither to get into the car. Once there, the probable-cause analysis takes over. When police have probable cause to believe a motor vehicle contains contraband, they may, without a warrant, search any area of the vehicle or any container within it, if they reasonably believe the contraband might be found. (*Lawrence*, 174 Ill. App. 3d at 822, 529 N.E.2d at 65.) This includes the trunk of a vehicle. (*Binder*, 180 Ill. App. 3d at 627, 536 N.E.2d at 221.) Probable cause to search exists when, considering the totality of the facts and circumstances known to the trooper at the time of the search, a reasonable person would believe contraband was present in the automobile. *People v. Clark* (1982), 92 Ill. 2d 96, 100, 440 N.E.2d 869, 871; *Lawrence*, 174 Ill. App. 3d at 822, 529 N.E.2d at 65.

■ In the present case, Gaither testified that (1) he smelled a strong odor of burnt marijuana; (2) he found some loose marijuana on the front seat, backseat, and floorboard; and (3) he found rolling papers and a cigarette lighter near some of the marijuana. This testimony is corroborated by that of Colbrook, who saw the loose marijuana and smelled the odor later. This is sufficient to establish the presence of probable cause (see *People v. Bowman* (1988), 164 Ill. App. 3d 498, 501-02, 517 N.E.2d 771, 774), which justifies a search of the entire vehicle.

■ Defendant maintains to the contrary. He notes the troopers did not recover the plant material, and he contends their testimony is incredible. It is well settled the trial court's determination in this regard should only be overturned where it is contrary to the manifest weight of the evidence. (*Clark*, 92 Ill. 2d at 99, 440 N.E.2d at 871.) The court heard the testimony, observed the witnesses, and determined the relevant credibilities. We find no error with its conclusion.

Defendant next contends the court incorrectly found he was eligible for an extended-term prison sentence. Both offenses are Class 4 felonies, which carry a maximum of three years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(7)), unless the extended-term provisions apply, in which case the maximum is six years (Ill.

Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(6)). In the present case, the court determined defendant qualified for an extended-term sentence pursuant to section 5—5—3.2(b) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)).

■■ This section provides that the court may impose an extended-term sentence "[w]hen a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1).) A Federal conviction in Illinois also qualifies as a basis for extending a subsequent sentence. *People v. Harden* (1986), 113 Ill. 2d 14, 21-22, 495 N.E.2d 490, 494.

A review of defendant's record establishes that in October 1979 he was found guilty, by a jury sitting in the Federal Central District Court of Illinois, of committing the offense of unlawful distribution of a controlled substance. He was subsequently sentenced to five years' imprisonment. This case was reversed and remanded on appeal on June 16, 1980. Following a jury trial on March 2, 1981, he was again found guilty and, on April 13, 1981, he was placed on probation and received a suspended sentence.

■ It is clear from the language of section 5—5—3.2(b)(1) of the Code that the 10-year period runs from conviction to conviction. The date of conviction is the date of entry of the sentencing order. (*People v. Robinson* (1980), 91 Ill. App. 3d 1128, 1130, 414 N.E.2d 1335, 1336.) Thus, the period in question is from April 13, 1981, the sentencing on the Federal offense, to August 31, 1990, the date of sentencing on the present offense. This is clearly within the 10-year period, and the extended-term sentence is thus permissible.

Defendant argues that the fact his Federal conviction was originally overturned on appeal calls for a different result. He observes that his original conviction was in 1979, which is outside the 10-year period. The only reason he now falls within the 10-year period is because he won his original appeal. He cites to section 5—5—4 of the Code, which provides:

> "Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the

part of the defendant occurring after the original sentencing." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—4.) He maintains that using the 1981 conviction as a basis for an extended-term sentence runs afoul of the rationale of this provision and the Supreme Court authority upon which it is based (see *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072) because, since he could not have received an extended-term sentence for a 1979 conviction, he is being sentenced more severely due to his appellate success. Defendant is mistaken.

The purpose of *Pearce* and section 5—5—4 of the Code is to avoid vindictive resentencing by a trial court when a defendant successfully exercises his appellate rights. (See *Pearce*, 395 U.S. at 725, 23 L. Ed. 2d at 669, 89 S. Ct. at 2080.) However, that is not the situation now facing us. Here, defendant is sentenced on a new offense. Admittedly, defendant's success on appeal pushed his conviction back to 1981 and qualified him for a more severe penalty, but that is simply a collateral effect of his appeal. This is not the circumstance in which a defendant can be vindictively penalized by the sentencing court for successfully appealing. In fact, defendant, upon remand, received a less severe sentence in the Federal court, and it is only due to the new criminal conduct that this sentence has been imposed. Accordingly, we conclude that there is no impairment to the application of section 5—5—3.2 of the Code by the fact that a defendant at one time successfully prosecuted an appeal in the case involving the aggravating conviction, which resulted in that conviction occurring within 10 years of the present one.

Finally, defendant suggests his sentence, the maximum extended-term sentence, is excessive. Defendant's record shows not only the Federal drug-distribution conviction, but also two 1975 convictions involving possession and distribution of a controlled substance. When a sentence falls within the statutory range and the court has not erred in the selection of information to consider, we can properly alter the severity of a sentence only when it constitutes an abuse of discretion. (*People v. Crews* (1989), 191 Ill. App. 3d 228, 237, 547 N.E.2d 580, 586.) Here, we find none.

Affirmed.

GREEN and KNECHT, JJ., concur.