COMMONWEALTH *vs.* PAUL H. FULLER. No. 90-P-204. MARCH 26, 1991. *Controlled Substances. Constitutional Law*, Search and seizure. *Search and Seizure*, Automobile, Arrest, Container.

While making an inventory search after a traffic arrest, State Trooper Brian Moore found a brick of cocaine which, on analysis, weighed 244.5 grams and was eighty-five percent pure. The driver, the defendant Fuller, was convicted by a jury of trafficking in more than 200 grams of cocaine (G. L. c. 94C, § 32E[*b*][3]), as in effect prior to St. 1988, c. 124. The question presented is whether the police officer acted within the bounds of reasonable search and seizure when he dipped into a brown paper bag in the automobile passenger compartment.

These are the facts found by the judge of the Superior Court who heard, and denied, a motion to suppress the incriminating evidence. While on routine patrol on Interstate 95 in Mansfield, Trooper Moore clocked the defendant as moving at sixty-five miles per hour and motioned to him to slow down. The trooper then accelerated and went on ahead. He pulled into a rest area to make a sweep check and while there noticed the car the defendant was driving — a white Chevrolet — speed by. Trooper Moore took off after the defendant and clocked him again, this time at sixty-seven miles per hour. Now the trooper stopped the defendant. Fuller handed over his driver's license but was unable to produce a registration because the car was a rental car borrowed from a friend. Trooper Moore called in a check on Fuller's license, learned that it had been suspended, and arrested Fuller for operating a vehicle after suspension of his license (G. L. c. 90, § 23). As Fuller was not going to be permitted to continue to drive that night, it became necessary for the State trooper to have the white Chevrolet brought to a secure place. Preparatory to that, Moore proceeded to conduct an inventory search. As to the reasonableness of inventory searches of automobiles about to be towed, see *Commonwealth* v. *Tisserand*, 5 Mass. App. Ct. 383, 386-387 (1977). See also *Commonwealth* v. *Matchett*, 386 Mass. 492, 508-511 (1982); *Commonwealth* v. *Oreto*, 20 Mass. App. Ct. 581, 583, 587 (1985).

A brown bag partially under the front passenger seat, with the top of a plastic zip-lock bag sticking out, had earlier caught Trooper Moore's eye. He felt the bag and it was hard. Uncertain about what was in the bag, Moore probed inside and discovered what he took to be "rock" cocaine. Later testing bore out that surmise. Moore also found some clothing, placed in the trunk of the car, and noted it on an inventory sheet. These events took place on December 2, 1987.

When Trooper Moore conducted the inventory search, he proceeded under a written State Police policy ("OPR-25") "to conduct and record an inventory of the contents of vehicles towed, removed or stored at the request of the Division [of State police] as the result of a police action." Since the time of the search in this case, it was held in *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988), that police may not open closed containers and examine their contents for purposes of inventory unless written regulations for conducting inventory searches instruct officers in what circumstances they are to open a container and to record the contents as separate items. Such written procedures, *Bishop* says, are basic to satisfying the protection afforded citizens under art. 14 of the Declaration of Rights of the Massachusetts Constitution. Whether, in the event, a search of a closed container even pursuant to uniform regulations will fill the bill of art. 14 is still an open question. See *Bishop, supra* at 451 n.1. The inventory search rule applicable when Trooper Moore examined the paper bag in the car Fuller had been driving made no provision for when and what closed containers would be searched and how they would be searched. Accordingly, Fuller argues, the search here was bad and the evidence of cocaine should have been suppressed.

To press that contention, Fuller must assume that the paper bag was a closed container. The record of the hearing on the motion to suppress, however, does not encourage that assumption. The testimony of Trooper Moore at the suppression hearing was that he "observed a brown paper bag with plastic bags sticking out from from within the brown paper bag on the passenger side floor sticking out from under the front seat." As for the motion judge's findings, they state simply that, "The officer then conducted an inventory search of the defendant's vehicle for valuables pursuant to [S]tate police policy and discovered 240 grams of cocaine on the floor by the passenger's right-front seat." The parties and the judge seem to have proceeded on the basis that the potentially incriminating evidence was in plain view. As to such evidence, we do not expect the police to avert their eyes. *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 551 (1989). Contrast *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 770 (1989) (the police may not hunt for information or things which do not declare themselves).

More particularly, the defendant's contention is defeated because he never alluded to it, much less pressed it, during the suppression hearing or during the trial of the case. Subject to the rarest exceptions, it is not open

to the defendant to change the theory of the defense on appeal. *Commonwealth* v. *Fano*, 400 Mass. 296, 306 (1987). *Commonwealth* v. *Ramos*, 402 Mass. 209, 211-212 (1988). *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 388 (1985). See also *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 57 (1982).[1] Before the motion judge, the grounds for suppression were that the officer lacked probable cause to stop the defendant, that the stop was a pretext to search the vehicle, that the defendant never asked the trooper to secure the car and make an inventory of its contents, and that the trooper did not fill out the inventory sheet properly. Whether the bag was closed (if so, the inner plastic bag would not have been protruding) was simply never gone into by defense counsel. At trial, the theory of the defense was primarily that the drugs did not belong to Fuller, but probably belonged to the person who had rented the car which Fuller was driving. Fuller took the stand and testified that he had not been aware there were drugs in the car and knew nothing about them. Neither the motion judge nor the trial judge was required to explore, on his own motion, whether the trooper had improperly opened the bag, not only because the point was not raised, but because the only evidence presented suggested an open bag with suggestive material visible.

Not until the case was presented on appeal did the defense (there was different counsel on appeal) urge that there was a discrepancy between what Trooper Moore said about the bag at the probable cause hearing in the District Court and his testimony in the Superior Court proceedings. What the defense now presses is that Moore's statement at the probable cause stage, "I opened up the bag and found it to contain a white powdery substance," suggests a closed container. The statement is not inconsistent with reaching into an open bag. In any event, the motion judge was given no opportunity to explore whether Moore had refined his testimony. That judge had only Moore's testimony before him; earlier variations, if any, were not brought to the judge's attention.

Finally, the defendant argues that his arrest and the seizure of the car were based on a false premise because his driver's license had not, in fact, been suspended. Ultimately that turned out to be so but those were not the facts available to the trooper on the night in question. On that occasion the Registry of Motor Vehicles did report a suspension of Fuller's license and the trooper was, therefore, warranted in taking the steps which led to an inventory of the contents of the car.

*Judgment affirmed.*

*James S. Dilday* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

---

[1]Indeed, under Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), when the case is still in the trial court, grounds not stated in a pretrial motion which reasonably could have been known when the motion was filed are deemed waived. A judge does have discretion, under the rule, to grant relief from the waiver for cause shown.